UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:21-CR-00012-BJB-RSE-3

UNITED STATES OF AMERICA              PLAINTIFF

VS.

NATHANIEL DURHAM                DEFENDANT

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION

Defendant Nathaniel Durham ("Durham") is charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (DN 12). Durham has filed a Motion to Suppress evidence seized incident to his arrest on December 3, 2020. (DN 48). This motion was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) for a hearing and for findings of fact, conclusions of law, and recommendation. (DN 56). The Court held an evidentiary hearing on Durham's Motion on February 22, 2022. (DN 59). The parties filed post-hearing briefs. (DN 70; DN 71). For the following reasons, the Court recommends Durham's Motion to Suppress be denied.[1]

### I. Findings of Fact

On December 3, 2020, Louisville Metro Police Department ("LMPD") detectives were conducting surveillance on Marquise Reyes ("Reyes") at his residence at the Derby Oaks Apartment complex in Louisville, Kentucky. (DN 68, at PageID # 236). Officers placed a pole camera to record activity in the parking lot and around the entrance of Reyes' building. (*Id.* at PageID # 237). While monitoring the pole camera, a detective observed a gray Ford Escape with

---

[1] This case remains under the Speedy Trial Act's automatic exclusion of time, 18 U.S.C. § 3161(h)(1)(D), for hearing, consideration, and disposition of pending motions.

1

a temporary tag arrive at the parking lot. (*Id.* at PageID # 240–41). Three individuals were observed exiting the Escape, and officers perceived Defendant Nathaniel Durham to exit from the driver's seat. (*Id.* at PageID # 241). Officers noticed the individual exiting the front passenger seat appeared to be carrying a rifle. (*Id.*). The individuals were then seen entering Reyes' apartment building, where they remained for approximately thirty minutes. (DN 50, at PageID # 168).

While the individuals were in the apartment building, detectives ran an inquiry on the Escape's VIN and learned it was reported stolen in October of 2020. (DN 68, at PageID # 242–43). Detectives then decided to arrest the three individuals for receipt of stolen property. (*Id.* at PageID # 243). Moments later, four individuals, now including Reyes, emerged from the apartment building and walked toward the vehicle. (*Id.* at PageID # 244). Officers converged on the vehicle with guns drawn and identified themselves as police. (*Id.* at PageID # 247–48). Durham fled and can be seen on pole camera footage dropping or discarding a firearm in the process. (*Id.* at PageID # 245). He was apprehended after a short foot chase. (*Id.* at PageID # 247).

Law enforcement confirmed all four individuals were convicted felons and not permitted to possess firearms, and all four were arrested.[2] (*Id.* at Page ID # 246–47). On February 23, 2021, the grand jury charged them each with possession of a firearm by a prohibited person. (DN 12). Durham now seeks to suppress all evidence attributed to him from the December 3, 2020 stop and arrests. (DN 48; DN 70).

## II. Conclusions of Law

Durham argues LMPD officers lacked probable cause to effectuate his arrest because they had no evidence linking him to the theft of the vehicle or indicating that Durham knew the vehicle

---

[2] Officers seized and could attribute firearms to each of the individuals. *See* DN 68, at PageID # 247 ("So we did recover a total of five [firearms]. There was the one by the back bumper, which Mr. Durham had possessed. There were two in the center console; and there was one in Mr. Cosby's hoodie pocket; and then Mr. Reyes had one that he discarded right next to him.").

2

was stolen. (DN 70, at PageID # 270). Durham also notes that the officers did not know his identity, felon status, or whether he was armed when they made the decision to arrest the men. (*Id.*). Rather, the officers knew only the identity and felon status of Reyes, that the vehicle was reported stolen, and that a third individual possessed a rifle. While perhaps sufficient to justify an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), according to Durham, this evidence was insufficient to warrant his arrest. (*Id.* at PageID # 269).

The United States counters that the officers' attempted stop of Durham was lawful, as they had probable cause to believe he and two of his co-defendants were in possession of stolen property. (DN 71, at PageID # 274). Further, the officers had a reasonable and particularized suspicion that additional criminal activity may be afoot once they observed Reyes, the target of their surveillance, attempt to enter the vehicle with his co-defendants, one of whom was visibly armed. (*Id.*). Finally, once officers observed Durham discard a handgun and attempt to flee, the United States contends the officers had probable cause to justify his arrest. (*Id.* at PageID # 273).

## A. Durham's Arrest

An officer may arrest an individual if the officer has probable cause to believe the person has committed or is committing a felony based on the totality of the circumstances. *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996). Probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Durham argues LMPD officers lacked probable cause to arrest him for being in possession of a stolen motor vehicle because they had no evidence of Durham's knowledge that the Escape was stolen or that would otherwise connect him to the Escape during the month-long period between its reported theft and when it arrived at the Derby Oaks parking lot. (DN 70, at PageID # 270).

The Supreme Court has held that "[t]o determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause[.]" *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Here, LMPD detectives ran a report on the Escape's VIN when the vehicle arrived at the Derby Oaks Apartments. Based on the information in the report, they knew the vehicle had been reported stolen as of October 28, 2020. Testimony from LMPD detective Jonah Kiper during the February 22, 2022 hearing revealed that officers decided to arrest the three individuals seen exiting the Escape once they determined the vehicle to be stolen. (DN 68, at PageID # 241 ("The plan was to . . . set up a perimeter. And as the individuals walked out and got into the car, we would effect an arrest of the individuals that were getting into the car.")). The question is, then, whether officers had probable cause to arrest the individuals at that point, before they reemerged from the building with Reyes and before Durham fled from police.

It is undisputed that the vehicle's stolen status alone provided probable cause to stop the Escape in order to investigate a felony—possession of a stolen motor vehicle. *See* Ky. Rev. Stat. Ann. § 514.110. The fact that Durham may not have been involved in the Escape's original theft is immaterial when the police are reasonable in believing the car was stolen. Additional facts, including that the Derby Oaks Apartment complex was a high crime area particularly known to police as a depot for stolen vehicles,[3] and that one of the individuals with Durham was seen carrying a rifle as he walked into the apartment building, led officers to reasonably believe the individuals had committed, were committing, or were about to commit a felony. To be sure, "while an 'individual's presence in an area of expected criminal activity, standing alone, is not enough to

---

[3] *See* DN 68, at PageID # 241 ("One of the common themes that we saw of people frequenting this location, as I mentioned before, was stolen cars.").

4

support a reasonable, particularized suspicion that the person is committing a crime,' police 'officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.'" *United States v. Pearce*, 531 F.3d 374, 383 (6th Cir.2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). Likewise, the fact that Durham's passenger was openly carrying a rifle would not alone justify Durham's arrest. Considering the totality of the circumstances, however, officers had probable cause not only to stop the individuals, but to arrest them at the time they exited the apartment building.

Durham argues LMPD lacked any objective reason to suspect he knew the vehicle was stolen. "However, the question is not whether [Durham] would have eventually been exonerated of the charge of possessing stolen property, but rather whether the arresting officers had probable cause to stop and subsequently detain [] occupants of the vehicle based on the facts known to them at the time of the stop and arrest . . . ." *United States v. Arnold*, No. 15-20652-01, 2017 WL 3768937, at *2–3 (E.D. Mich. Aug. 31, 2017). Additionally, the officers perceived Durham to exit the driver's seat of the stolen vehicle, which casts doubt on his claim that he lacked knowledge[4] of the vehicle's stolen status. (DN 71, at PageID # 272). More importantly, it bolsters the officers' reasonableness in believing, at the time they decided to make the arrests, that Durham had committed or was committing a felony as the driver of the stolen vehicle. Under the circumstances of this case, the officers had probable cause to arrest Durham for possession of stolen property.

Even if the officers did not have probable cause to arrest Durham for possession of the stolen Escape, officers making a *Terry* stop may ensure safety upon reasonable suspicion that an

---

[4] KRS § 514.110 provides that "(1) A person is guilty of receiving stolen property when he or she receives, retains, or disposes of movable property of another knowing that it has been stolen, *or having reason to believe that it has been stolen*[.]" Ky. Rev. Stat. § 514.110 (emphasis added).

5

individual may be armed and dangerous. *United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008) (citation omitted). In this case, Durham's co-defendant was seen carrying a rifle, confirming that at least one individual was armed and dangerous, and giving officers reason to suspect others may be as well. It is without question that officers had reasonable suspicion to support a *Terry* stop and a pat-down search for weapons, which quickly became probable cause to effect Durham's arrest when he fled police and a firearm was seen falling from his person. Based on the foregoing, the Court finds that LMPD officers had probable cause to arrest Durham on December 3, 2020.

B. Seizure of Evidence

"Despite the existence of probable cause to arrest, [] the search at issue also must be justified under an exception to the warrant requirement." *United States v. McCraney*, 674 F.3d 614, 618 (6th Cir. 2012). The Court begins "with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

If the discovery of evidence in this case were the product of an illegal arrest or search, the exclusionary rule would prevent its use as evidence against Durham. *United States v. Britton*, 335 F. App'x 571, 575 (6th Cir. 2009); *United States v. Alexander*, 540 F.3d 494, 501–02 (6th Cir. 2008) (reaffirming that "[t]he exclusionary rule bars the admissibility of items seized during an unconstitutional search," and that "[t]he 'fruit of the poisonous tree' doctrine bars introduction of derivative evidence that is the product of the primary illegally obtained evidence or testimony"). It is this "fruit of the poisonous tree" theory which Durham centers his Motion to Suppress.[5] He

---

[5] Durham titled his post-hearing brief "Post-Hearing Brief in Support of Defendant's Motion to Suppress Fruits of Search."

makes no separate argument surrounding the seizure of his discarded firearm. Moreover, Durham broadly requests that "any evidence attributed to him" be suppressed and does not specifically address the officers' warrantless search of the Escape or articulate specific evidence he takes issue with. (DN 70, at PageID # 266). For its part, the United States puts forth that because Durham voluntarily abandoned the firearm prior to being seized, he lacks standing to challenge the seizure of the firearm. (DN 71, at PageID # 275).

To begin, the United States' argument that Durham lacks "standing" to move to suppress evidence related to the firearm must fail. Although the government cites to a case out of the Fifth Circuit for support, the Sixth Circuit Court of Appeals has directly addressed this issue:

> [C]haracterizing the question as one of "standing" miscasts the issue. The Supreme Court rejected the concept of "standing" in the context of the Fourth Amendment in *Rakas v. Illinois*, 439 U.S. 128, 139–40 (1978). It is commonly acknowledged that "in determining whether a defendant is able to show the violation of his . . . Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas*, 439 U.S. at 140). Eight years ago, this court recognized that "the concept of 'standing' has not had a place in Fourth Amendment jurisprudence for more than a decade" and that "the matter of standing in the context of searches and seizures actually involve[s] substantive Fourth Amendment law [in which] . . . a defendant [must] prove a legitimate expectation of privacy as a prerequisite to challenging assertedly unlawful police conduct." *United States v. Smith*, 263 F.3d 571, 581–82 (6th Cir. 2001).

*Britton*, 335 F. App'x at 574 (cleaned up). Rather than a lack of standing, "[a] person who abandons his property does not have a legitimate expectation of privacy in that property and therefore cannot assert any Fourth Amendment interest in it." *Id.* (citing *United States v. Robinson*, 390 F.3d 853, 873–74 (6th Cir.2004) ("If property has been 'abandoned' . . . the Fourth Amendment is not violated through the search or seizure of this property.")).

In addition, as in *Britton*, the record here does not support a finding that Durham abandoned or attempted to disclaim ownership of the firearm. The pole camera footage does not capture

Durham throwing the gun, but only shows the firearm falling to the ground as Durham attempts to flee. Durham could have simply dropped the gun as he ran, which would not have eliminated his Fourth Amendment interest in it. See *Britton*, 335 F. App'x at 575 (finding no basis for concluding a defendant relinquished his expectation of privacy in a firearm that inadvertently fell from his person as he jumped a fence while fleeing police).

Even so, several exceptions to the warrantless search requirement are applicable here. First, the gun was validly seized because the three requirements for a warrantless seizure under the plain-view exception are present. *See United States v. Matthews*, 422 F. Supp. 3d 1235, 1253 (W.D. Ky. 2019). Specifically, the plain-view doctrine justified the seizure because officers (1) could see the firearm in plain view once it was dropped by Durham and had a lawful right of access to the firearm once it fell to the ground; (2) as explained above, officers were legally present at the location from which they could plainly see the firearm because the December 3, 2020 stop and arrests were valid; and (3) the incriminating nature of the firearm was immediately apparent. Accordingly, the seizure of the firearm Durham dropped or discarded was valid under the plain-view doctrine.

Moreover, "once the gun was in plain view, a concern for officer safety also justified the warrantless seizure of the weapon because 'a reasonable officer would [have] believe[d], based on specific and articulable facts, that the weapon pose[d] an immediate threat to officer or public safety.'" *See Matthews*, 422 F. Supp 3d at 1253 (quoting *United States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003)). As explained above, the officers were in a place where they were lawfully allowed to be and watched the firearm fall from Durham's person to the ground directly under the Escape. The Court finds that under the circumstances, a reasonable officer would have believed the weapon in plain view posed an immediate safety threat, as they were still working to detain three other individuals who were near the discarded firearm and could have attempted to reach it.

Thus, the warrantless seizure of the firearm was justified under the exception for immediate safety threats.

Lastly, "police officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citation omitted). The LMPD officers had probable cause to believe that evidence of a crime, possession of a stolen vehicle, could be found in the Escape. In addition, an inventory search may be conducted without a warrant if the police have "lawfully tak[en] custody of the vehicle." *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998). Having confirmed the vehicle as stolen, and having lawfully arrested its occupants, LMPD could impound the Escape and seize items from it in accordance with its inventory policy. Thus, there can be no doubt that any evidence attributed to Durham from the search in and around the Escape was lawfully seized.

III.  Recommendation

**IT IS THEREFORE RECOMMENDED** that Defendant Nathaniel Durham's Motion to Suppress Evidence (DN 48) be **DENIED**.

Regina S. Edwards, Magistrate Judge
United States District Court

April 19, 2022

**NOTICE**

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. Fed. R. Civ. P. 59(b)(2). If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 150–51, 106 S. Ct. 466, 88 L.Ed.2d 435 (1985).

Copies:    Counsel of Record