## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                                      No. 3:21-cr-12-BJB

NATHANIEL DURHAM

* * * * *

### MEMORANDUM OPINION & ORDER

Nathaniel Durham either tossed or dropped a gun onto the parking-lot pavement when he fled from law enforcement before his arrest in this case. He moved to suppress the gun's use as evidence because, in his view, the government obtained it during an illegal search or seizure. DN 48. The Magistrate Judge disagreed: she recommended that the Court deny his motion because the officers had probable cause to arrest Durham, or at least enough information to stop him briefly. DN 72. Despite Durham's objections, the Magistrate Judge's findings regarding probable cause and reasonable suspicion are right, and Durham is wrong that this issue is even dispositive for his argument.

That is because law enforcement didn't recover the gun during a search after the arrest; they found it *before* the arrest, laying on the parking-lot pavement where Durham dropped or tossed the gun as he fled from officers. This doesn't justify suppression of the evidence. The law makes clear that Durham was not under arrest at the time and had no reasonable expectation of privacy in a gun that police saw on the ground. Nothing in the Fourth Amendment requires officers to avert their eyes from evidence a suspect reveals to them in public.

### I.

The facts are straightforward. Louisville Metro Police Department officers were investigating Marquise Reyes at his apartment in a high-crime area on December 3, 2020. Suppression Hearing Transcript (DN 68) at 4:19–5:9. The officers surveilled him using a pole camera placed in the parking lot near the entrance of Reyes's building. *Id.* at 5:10–20. While monitoring the feed, an officer observed a gray Ford Escape with a temporary tag pull into the parking lot. *Id.* at 8:24–9. That piqued the officer's interest because, as he later testified, a "common theme[ ] … of people frequenting this location … was stolen cars," which thieves often disguised with "fake temp tags." *Id.* at 9:1–9. Out of the car came three people, including Mr.

Durham, who exited the driver's seat. Another person emerged from the front passenger seat carrying what appeared to be a rifle. *Id.* at 9:10–16.

After the trio entered the apartment building, an LMPD detective approached the vehicle, scanned the VIN number, and ran a report on the car. *Id.* at 10:13–11:4. The report revealed that the vehicle had been stolen in October 2020. *Id.* at 10:5–6. The officers proposed to arrest the car's occupants when they reemerged from the apartment building for illegally receiving stolen material. *Id.* at 11:11–18. A few minutes later, the three riders plus a fourth, Mr. Reyes (the initial target of the surveillance), left the building and approached the car. *Id.* at 12. One wore gloves and carried a rifle. *Id.* at 12:4–7.

As the four men stepped into the vehicle, officers identified themselves and converged on Durham and his colleagues with guns drawn. *Id.* at 13:15–14:18. Durham immediately fled and either lost or tossed his Sig Sauer 9mm handgun near the vehicle. *Id.* at 13:15–19. Officers eventually overtook Durham after he hopped a couple of fences and hid in a neighboring yard. *Id.* at 15:16–20. Back at the car, officers found the Sig Sauer 9mm on the ground near the car, a rifle leaning against the gear shift, two handguns in the middle console, and one in the pocket of a hooded sweatshirt worn by one the four suspects. *Id.* at 14:4–14; 15:5–9. Further investigation revealed that all four men had received felony convictions, which prohibited them from carrying firearms. *Id.* at 14:24–15:2.

A federal grandy jury indicted Durham and the others as felons in possession of firearms under 18 U.S.C. § 922(g)(1). DN 12. Durham moved to suppress evidence—the gun found near the vehicle. DN 48. The Court referred the motion to Magistrate Judge Edwards (DN 56), who prepared a report recommending denial of the motion to suppress. (DN 72). Durham objected to the report's conclusions that officers had probable cause to arrest Durham or reasonable suspicion to support a *Terry* stop. DN 76.

## II.

If the officers' discovery of the firearm resulted from an illegal arrest or unreasonable search, then the exclusionary rule fashioned by the Supreme Court would require suppression of that evidence at trial. *See United States v. Alexander*, 540 F.3d 494, 501–02 (6th Cir. 2008). But the handgun didn't come from an illegal arrest or search. Instead, officers obtained the gun when Durham dropped it as he fled before officers arrested him and his co-defendants.

## A.

A Fourth Amendment seizure occurs only when an officer (1) "applies physical force to restrain a suspect" or (2) uses a "show of authority" that causes the suspect to submit. *United States v. Jeter*, 721 F.3d 746, 751–52 (6th Cir. 2013) (quotation

omitted).  The contours of a seizure are drawn in numerous precedents, including the Supreme Court's decision in *California v. Hodari D.*  The evidence at issue in that suppression dispute was found by officers patrolling a high-crime neighborhood after they approached a group of young people huddled on a curb.  499 U.S. 621, 622–23 (1991).  Spooked by the officers' arrival, the youths took flight.  *Id.* at 623.  One of them, Hodari D., discarded what appeared to be a small rock but was actually crack cocaine.  *Id.*  Was this evidence obtained during an unlawful warrantless seizure? Not according to the Supreme Court: the Fourth Amendment's prohibition on unreasonable seizures did not apply because Hodari D. had not yet been seized when he discarded the contraband.  *Id.* at 626.  No seizure occurred until a police officer laid hands on the suspect or used a show of authority that actually caused the suspect to submit.  *Id.*

So too here.  Durham dropped the gun before officers laid hands on him and before he submitted to their command to stop.  The officers didn't remove the gun from Durham's person, but found it on the ground.  This fact pattern resembles that of a subsequent case the Sixth Circuit described as "totally consistent" with *Hodari D.*  In *United States v. Williams*, the Sixth Circuit held that "no seizure occurred" when "officers began to chase the defendant and shouted, 'Halt'" to a person fleeing. 949 F.2d 220, 222 (6th Cir. 1991) ("no seizure occurred … until the actual arrest took place").  Durham, like Hodari D. and Williams, fled rather than submitted to a show of law enforcement authority.  And while fleeing, Durham dropped or discarded the contraband.  Under *Hodari D.* and the decisions that followed it, this gun was not the fruit of a seizure since Durham hadn't either been restrained or voluntarily submitted to police.  *See Hodari D.*, 499 U.S. at 626, 629.

Does it matter whether Durham purposefully tossed or accidentally lost the gun while running away?  The defendant in *Hodari D.* intentionally abandoned the evidence at issue, whereas the evidence of Durham's intent is not clear.  *See* R&R at 7–8; *Hodari D.*, 499 U.S. at 623.  But neither the Supreme Court nor the Sixth Circuit have treated the question of intent as dispositive.  What matters is whether, not why, the evidence fell from the suspect before a seizure to a position of public view.  Indeed, *Hodari D.* "relied on *Hester v. United States*, 265 U.S. 57 (1924), which used 'abandon[]' to refer to both *throwing away and dropping items*."  *United States v. Phillips*, 677 F. App'x 294, 295 (6th Cir. 2017) (quoting *Hodari D.*, 499 U.S. at 629). So Durham lacks any constitutional claim that the Court must suppress the gun as the product of a seizure that hadn't yet occurred.

## B.

Even if the gun had been seized during an arrest, the arrest wasn't unlawful: as the Magistrate Judge concluded, the officers had probable cause to arrest Durham. R&R at 4–6.  Under the Fourth Amendment, a "warrantless arrest by a law officer is

reasonable" if the officer has "probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Here, officers learned Durham was driving a stolen car. Hearing Tr. at 10:13–11:4. And they had probable cause to believe he violated KRS § 514.110, which makes receipt of "stolen property … knowing that it has been stolen" a crime. This is consistent with decisions of the Sixth and other Circuits recognizing that observed stolen property can supply probable cause. *See United States v. Todd*, 431 F. App'x 412, 415 (6th Cir. 2011) (probable cause to arrest a suspect for trafficking in stolen goods after he was observed walking on a remote gravel road between his car and a vehicle loaded with stolen goods); *Rohde v. City of Roseburg*, 137 F.3d 1142, 1144 (9th Cir. 1998) ("a stolen vehicle report alone furnishes sufficient basis to arrest the driver" of the vehicle). Knowledge of Durham's possession of the stolen vehicle alone supported the Magistrate Judge's conclusion that the officers had probable cause to arrest Durham.

Other evidence also supported the officers' arrest determination. They knew the location as a high-crime area and a frequent site for stolen-car trafficking. *See* Hearing Tr. at 9:1–9. This context "is appropriate to consider" in "assessing the totality of the circumstances" supporting probable cause. *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004); *see also United States v. Pearce*, 531 F.3d 374, 382 (6th Cir. 2008) (similar). And before the arrests, officers saw one of the men entering the stolen vehicle while wearing gloves and carrying a rifle. Hearing Tr. at 12:4–7. Regardless whether openly carrying a gun would create probable cause on its own, carrying a gun while wearing gloves increases the risk of criminal activity and adds to the totality of the relevant circumstances. *See, e.g., United States v. Jones*, 432 F.3d 34, 43 (1st Cir. 2005) (latex gloves near a firearm contributed to officers' probable cause that defendant planned to commit crimes); *United States v. Cowart*, No. 1:08-cr-10119, 2009 WL 1588647, at *10 (W.D. Tenn. June 5, 2009) (gun near black gloves contributed to probable cause determination that suspects recently committed crime).

So Durham was driving a stolen car, in a high-crime neighborhood, with a passenger who put on gloves and carried a rifle. Taken together, this provided more than enough evidence for a reasonable person "to believe that a criminal offense"—that is, receipt of stolen property, KRS § 514.110—"has been or is being committed." *Devenpeck*, 543 U.S. at 152.

Does it matter that the officers reached their decision to arrest Durham and his compatriots before they re-emerged from the apartment with the gun-wielding, glove-wearing suspect? It does not. Courts considering whether officers had reasonable suspicion to support an arrest or search may consider all "the events which occurred leading up to the stop or search" to determine whether it was supported by probable cause. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). And they may consider those events at the moment of the arrest—not just the events

leading up to the officers' *decision* to make the stop or search. *See id.*; *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *see also Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action'") (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)); *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). And the probable-cause standard, in any event, "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014)

Regardless of probable cause, the arrest would certainly meet the even laxer standard for reasonable suspicion. Under *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'" even if the officer lacks probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). Here, based on all the evidence laid before the Magistrate Judge—the stolen vehicle, weapons, gloves, and neighborhood— officers had a reasonable basis to suspect that "criminal activity was afoot." *United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008). Thus the law permitted them to stop and briefly detain the suspects. *See Knowles v. Iowa*, 525 U.S. 113, 117 (1998) (officers may "perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous."). So the officers' interaction with the suspects here was not an unlawful stop that would lead to the suppression of the evidence they found.

## C.

Nor was the gun the result of an unreasonable search. The Supreme Court has explained that a "search" occurs when "a government official invades an area in which 'a person has a constitutionally protected reasonable expectation of privacy.'" *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). The evidence doesn't make entirely clear whether Durham intentionally dropped or accidentally lost the gun on the pavement while running. Either way, however, the law would not suppress the gun as the result of an unlawful search.

If Durham intentionally abandoned the gun during his flight, as the government argues, he did not have a legitimate expectation of privacy in that property. "If property has been 'abandoned,'" the Sixth Circuit has held, "the Fourth Amendment is not violated through the search or seizure of this property." *United States v. Robinson*, 390 F.3d 853, 873–74 (6th Cir. 2004); *see also United States v. Caldwell*, 238 F.3d 424, 2000 WL 1888682, at *7 (6th Cir. 2000) (no "reasonable

expectation of privacy" in "abandoned property" that was left behind when a suspect fled from officers).

Even if Durham inadvertently dropped the gun while fleeing, he would still lack a Fourth Amendment privacy interest in it. The Sixth Circuit has similarly held that a defendant lacks a reasonable expectation of privacy in a gun "publicly exposed through the defendant's" "inadvertent[]" actions. *United States v. Britton*, 335 F. App'x 571, 576 (6th Cir. 2009). Like other defendants before him, Durham "gave up any legitimate expectation of privacy in his handgun when he dropped it in a public street and left it behind for the world to see." *Philips*, 677 F. App'x at 296. "Therefore, the officer's seizure of the weapon was not unreasonable." *Id.*; *see also United States v. Eubanks*, 876 F.2d 1514, 1516 (11th Cir. 1989) (same).

Once Durham dropped the firearm—whether inadvertently or purposefully—he lost any expectation of privacy. *See Britton*, 335 F. App'x at 576; *Phillips*, 677 F. App'x at 296. The Fourth Amendment provides no safe harbor for a fleeing person to assert a privacy interest from afar in a gun laying on the pavement. The law does not compel police to "avert their eyes from evidence of criminal activity that could have been observed by any member of the public." *California v. Greenwood*, 486 U.S. 35, 41 (1988).

*****

The Court denies the motion to suppress (DN 48) because the officers' seizure of the gun did not result from an unlawful search or seizure.

Benjamin Beaton, District Judge

United States District Court

June 1, 2022